**Ben C. PRINCE, Plaintiff-Appellee,**

**v.**

**PACKER MANUFACTURING COMPANY, Defendant-Appellant.**

**No. 17604.**

United States Court of Appeals
Seventh Circuit.

Nov. 18, 1969.

er Manufacturing Company. Plaintiff sought recovery of sales commissions under an oral agreement with defendant. Plaintiff was to represent defendant in the promotion and development of sales of its printing presses in the greater Chicago area. Defendant counterclaimed for the recovery of commissions previously paid plaintiff under the oral agreement.

Following a bench trial, the district court entered its findings of fact and stated its conclusions of law. Based thereon, plaintiff was awarded judgment against defendant in the total sum of $11,172.16. The trial court denied defendant's counterclaim for $5,497.05. Defendant appeals from the money judgment in favor of plaintiff but does not appeal from the dismissal of its counterclaim. We affirm.

At all times relevant herein defendant's business, based in Green Bay, Wisconsin, was the manufacture and sale of printing presses and related equipment to customer specifications. For many years plaintiff was engaged in the sale of printing equipment and supplies in the greater Chicago area. Early in 1961, defendant had no sales representation in the Chicago region.

On May 20, 1961, by written letter agreement, defendant offered to pay plaintiff a commission of ten per cent on his sale of any of four specified demonstration machines it had on hand. In this letter defendant stated that it had not arrived at a definite decision concerning the employment of a sales representative in the greater Chicago area; that plaintiff was not to disclose to customers that he was representing defendant; and that he was merely acting as an agent in the sale of the four units.

James H. DeVries, James H. Ryan, Richard M. Sawdey, Chicago, Ill., for defendant-appellant; McBride, Baker, Wienke & Schlosser, Chicago, Ill., of counsel.

J. Norman Goddess and Ben C. Brostoff, Chicago, Ill., for plaintiff-appellee.

Before CASTLE, Chief Judge, HASTINGS, Senior Circuit Judge, and GORDON, District Judge.[1]

HASTINGS, Senior Circuit Judge.

This diversity action was removed from an Illinois state court to the federal district court. An amended complaint was filed by Ben C. Prince against Pack-

Within a few months after May 20, 1961, plaintiff and defendant's representative, Farrell Sickel, engaged in a series of conversations which culminated in the oral sales agreement in question.

At issue on this appeal are certain findings of fact by the trial court in-

---

1. Judge Gordon is sitting by designation from the Eastern District of Wisconsin.

terpreting the terms of the oral agreement and applying such terms to commissions found payable on sales to Mohawk Tablet Company (Mohawk) and Patio Paper Products Co. (Patio). Defendant charges that certain of such critical findings should be set aside as being clearly erroneous pursuant to Rule 52(a), Federal Rules of Civil Procedure, Title 28 U.S.C.A.[2]

A great host of reviewing courts have announced guidelines with many variants to be applied in determining whether findings of fact by trial courts are clearly erroneous within the meaning of Rule 52(a), *supra*. Perhaps fundamental to all such standards is an early declaration by this court in Fox River Paper Corporation v. United States, 7 Cir., 165 F.2d 639 (1948). Speaking for the court, Judge Minton (later Mr. Justice Minton) said: "The finding is not clearly erroneous if there is substantial evidence to support it. We consider only the evidence that supports the court's finding. We do not weigh the evidence or resolve any conflicts therein, or consider here the credibility of the witnesses." *Id.* at 640.

In Pleason v. Commissioner of Internal Revenue, 7 Cir., 226 F.2d 732 (1955), the late Judge Lindley wrote for us that it is for the trial court "to weigh the evidence, draw inferences and declare the result * * * [and] our only function is to determine whether the findings are clearly erroneous, that is whether upon the whole record, there is substantial evidence to support them and whether the court erred as to the law." *Id.* at 733. See also Zeddies v. C. I. R., 7 Cir., 264 F.2d 120, 126 (1959); Wisconsin Memorial Park Co. v. Commissioner of Int. Rev., 7 Cir., 255 F.2d 751, 754 (1958).

The latest expression by our court on the basic considerations underlying Rule 52(a), *supra*, is that of Chief Judge Castle in Graubremse GMBH, etc. v.

Berg Manufacturing & Sales Co., etc., 7 Cir., 417 F.2d 1201, at page 1203: "* * * The Supreme Court, in commenting on the above language [Rule 52(a)], stated: 'The rule requires that an appellate court make allowance for the advantages possessed by the trial court in appraising the significance of conflicting testimony and reverse only "clearly erroneous" findings.' Graver Tank & Manufacturing Company v. Linde Air Products Company, 336 U.S. 271, 275, 69 S.Ct. 535, 93 L.Ed. 672 (1949). Similarly, this Court in Harry Alter Company v. Chrysler Corporation, 285 F.2d 903, 906 (7th Cir. 1961), stated: 'The resolution of * * evidentiary conflicts is the precise function for which our trial courts sit. It is only necessary for us to determine on review whether the findings supporting the judgment have an evidentiary basis.' "

Our present consideration requires mention of one major variant from these basic standards. Under the clearly erroneous rule in civil actions an appellate court cannot upset a trial court's factual findings unless it is left with the definite and firm conviction that a mistake has been committed. Guzman v. Pichirilo, 369 U.S. 698, 702, 82 S.Ct. 1095, 8 L.Ed. 2d 205 (1962).

However, as stated by Mr. Justice Reed in United States v. United States Gypsum Co., 333 U.S. 364, at 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948): "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." See also United States v. Singer Mfg. Co., 374 U.S. 174, 194–195, fn. 9, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963); Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Wisconsin Screw Co. v. Fire-

2. In relevant part, Rule 52(a) provides: "In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to

Rule 58 * * *. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * * "

man's Fund Insurance Co., 7 Cir., 297 F. 2d 697, 698 (1962).

We first consider defendant's challenge to Finding No. 12, which interprets the oral agreement and reads:

"12. The court heard, read and considered all of the testimony concerning the written and oral agreements between the parties. The first agreement was the letter mentioned in paragraph 4 hereof. This letter, which was written by defendant to plaintiff, specifically avoided any general or exclusive agency arrangement between the parties. From this letter and all of the other evidence, the court finds that the parties gradually came to an understanding whereby the plaintiff was to receive commissions of first ten (10) per cent and later, for the period here in controversy, eight (8) per cent. These commissions were to be paid to plaintiff on all sales made by him or made directly by the defendant to any prospective customers whose names were furnished to plaintiff by defendant, whether such prospective customers had or had not been prior customers. The parties agreed that plaintiff should receive 8% commission on all sales to any new customer brought in by plaintiff, whether later sales were made by plaintiff or direct from the company. The company did not agree that plaintiff should be its exclusive agent in the Chicago region or that defendant was required to pay commissions of 8%, or at any rate, on sales made by defendant without participation of the plaintiff."

There is evidence in the record that the parties, by their own conduct, placed a practical construction upon the unwritten agreement which was reasonable and given at a time when the parties were harmonious. Under these circumstances, such a practical construction will be adopted by the courts. Pocius v. Halvorsen, 30 Ill.2d 73, 81, 195 N.E.2d 137, 13 A.L.R.3d 662 (1963).

An instance of such conduct is found in a sale to Fry Roofing Company in April, 1962. The reference to Fry Roofing came to plaintiff and Sickel from a third party. Plaintiff and Sickel together contacted representatives of Fry Roofing and talked to them. Sickel "made" the sale and plaintiff merely participated. Although plaintiff did not provide the lead and did not make the sale, he was paid a ten per cent commission. No other commission was paid. Sickel, who negotiated the oral agreement with plaintiff, testified there was no question about payment of the commission, it being a "clear cut case." Payment of a smaller commission was made to plaintiff on a similar sale to the Conex Division of Illinois Tool Works. Sickel further testified that plaintiff "was entitled to commissions based on sales made in the greater Chicago area."

Although some conflict is raised by the testimony of another of defendant's witnesses and some scattered passages in the record may be found in support of defendant's position, on the record as a whole there is ample evidence to support the trial court's findings in determining the terms of the oral agreement, under the guidelines hereinabove set forth. Certainly we have no definite and firm conviction that a mistake has been committed. Finding No. 12 is not clearly erroneous.

Plaintiff brought Mohawk to defendant as a new customer and participated in a sale to Mohawk. He was paid a commission on such sale which is not here challenged. Defendant then made two more sales to Mohawk in which plaintiff did not participate.

The second Mohawk sale concerned an attachment for the press first sold by plaintiff. This sale was made by defendant's vice president before shipment of the press first sold. The third sale to Mohawk involved another press similar to the first one and resulted from a call by Mohawk directly to defendant. Plaintiff claims defendant concealed the second and third sales from him.

It is conceded by defendant that Mohawk was "an account having originated from Mr. Prince." Under the trial court's

interpretation of the oral sales agreement in Finding No. 12 this was enough to justify the award of commissions to plaintiff on all subsequent sales to Mohawk whether he participated in them or not. Challenged supporting findings to this effect are not clearly erroneous and the trial court did not err in such awards.

■ The same result is commanded on the sale to Patio. In Finding No. 13b the trial court found defendant shipped equipment to Patio on July 29, 1965, following receipt of an order on July 31, 1964, for which it received payment of $37,197. The court further found: " * * * The relationship between defendant and Patio resulted from the fact that plaintiff had at one time sold a used Packer press to a firm called Auto-Pak. The owner of Auto-Pak was the brother of the owner of Patio, and this is how the initial contact was made. Copies of defendant's correspondence to Patio * * were sent to plaintiff. Defendant's witness testified that plaintiff was at Patio when the press was being installed * * [In defendant's deposition of Sickel, he was not examined on this transaction][3] * * *. The court finds that plaintiff was instrumental in producing this sale and is entitled to an 8% commission thereon." This finding is not clearly erroneous and the trial court did not err in this award.

In sum, since it is left to the trial court to weigh the evidence, resolve any conflicts, draw inferences, determine the credibility of witnesses and declare the result, we hold there is substantial evidence in the record as a whole to support the challenged findings. Further, not having a firm and definite conviction that a mistake has been committed, we hold that the findings of fact and conclusions of law based thereon are not clearly erroneous.

The judgment of the district court is affirmed.

Affirmed.

3. Plaintiff was not contradicted in his testimony that when he first learned defendant had shipped the equipment to Patio,

he turned to Sickel and said, "Now, I suppose I can bill you for this machine." Sickel replied, "Certainly."