INDIANA STATE EMPLOYEES ASSO-
CIATION, INC., an Indiana not-for-
profit corporation, et al., Plaintiffs-Ap-
pellants,

v.

Harold NEGLEY, Individually and as
State Superintendent-elect of Public
Instruction, Defendant-Appellee.

No. 73-2096.

United States Court of Appeals,
Seventh Circuit.

Argued May 20, 1974.

Decided Aug. 9, 1974.

Ronald E. Elberger, Indianapolis, Ind., for plaintiffs-appellants.

Theodore L. Sendak, Atty. Gen., Robert S. Spear, Deputy Atty. Gen., Indianapolis, Ind., for defendant-appellee.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and MATTHES, Senior Circuit Judge.*

MATTHES, Senior Circuit Judge.

This case was spawned by Illinois State Employees Union v. Lewis, 473 F. 2d 561 (7th Cir. 1972), cert. denied, 410 U.S. 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973). In *Lewis*, this court generally disapproved on first amendment grounds patronage dismissals of *non-policy making* public employees, while affirming the right of a public executive to use political philosophy or affiliation as a basis for discharging *policy making* officials. A resolution of the present controversy turns on the correctness of the district court's finding that plaintiffs, former employees of the Indiana Department of Public Instruction, occupied policy making positions.

The defendant-appellee, Harold Negley, a Republican, was elected State Superintendent of Public Instruction for a

* Senior Circuit Judge M. C. Matthes of the Eighth Circuit is sitting by designation.

two year term at the November 1972 general election, defeating the incumbent Democrat, John J. Loughlin. The Superintendent-elect assumed the office on March 15, 1973.[1]

In January of 1973, Superintendent-elect Negley caused plaintiffs Jonetta C. Holland, E. Marie (Visher) Bonvillain, William Wallace, Ronald E. Drury, C. Michael Pitts, John J. Day, Ross B. Norrick, and others[2] to be notified that their positions in the Department of Public Instruction would be terminated, effective March 15, 1973. This action precipitated the filing of the present suit on January 17, 1973, by the Indiana State Employees Association, Inc., an Indiana not-for-profit corporation, and Jonetta C. Holland, E. Marie Bonvillain, and William Wallace, individually and on behalf of all others similarly situated, against Negley and the incumbent Superintendent, Loughlin.

Jurisdiction was predicated on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4). Plaintiffs alleged that their termination was motivated by their political party affiliation as Democrats and that discharge for such reason was violative of their rights to freedom of association, equal protection, and due process, as secured by the first and fourteenth amendments to the United States Constitution and by Art. 1, §§ 9, 12 and 23 of the Indiana Constitution. Plaintiffs sought an injunction, declaratory relief, and damages.

An amended complaint was filed on January 19, 1973, in which Ronald E. Drury, C. Michael Pitts, John J. Day, and Thomas Charles Abeel joined as individual plaintiffs.

Pursuant to plaintiffs' motion for a preliminary injunction, the district court, Judge Noland, heard evidence on March 2 and March 8, 1973. At the conclusion of the hearing on March 8, the judge orally denied the motion for a preliminary injunction. A memorandum opinion was filed on March 16, 1973, and is reported at 357 F.Supp. 38 (S.D.Ind. 1973). Thereafter, pursuant to motion of plaintiffs, the court dismissed the action as to defendant John J. Loughlin. The court also ordered that the cause "not proceed as a class action as to all similarly situated non-policy making employees of the Department of Public Instruction." At the same time, however, the court provided that additional parties plaintiff might be joined at any time prior to July 9, 1973. One other discharged employee, Ross B. Norrick, was joined as a party plaintiff by order entered on July 9, 1973. By stipulation of the parties, approved by the court, it was agreed that all evidence received upon the application for preliminary injunction would become a part of the record at the trial of the cause on the merits.

The case was tried before Judge Noland without a jury on July 9, 10 and 11, 1973. On October 24, 1973, Judge Noland filed his judgment and memorandum opinion, reported at 365 F.Supp. 225 (S.D.Ind.1973). As reference to the opinion will disclose, the district court concluded that plaintiffs were not entitled to any relief, entered judgment in

1. Negley was elected pursuant to Art. 8, § 8 of the Indiana Constitution and Burns' Ind. Stat.Ann. § 28–201, IC 1971, 21–1–1–55, which provided for the election of a State Superintendent of Public Instruction for a term of two years. On the same date that Negley was elected, November 7, 1972, the electorate of Indiana voted to amend Art. 8, § 8 of the Constitution to provide as follows:

> "There shall be a State Superintendent of Public Instruction, whose method of selection, tenure, duties, and compensation shall be prescribed by law."

Pursuant to such amendment, the legislature of Indiana in 1973 enacted Public Law 210, codified as Burns' Ind.Stat.Ann. § 28–201a, IC 1971, 20–1–11.5–1, which provides that the Superintendent of Public Instruction shall not be elected at the general election in 1974, but that instead the governor shall appoint a person to that office to serve from March 15, 1975, until the second Monday in January, 1977.

2. In all, 18 employees of the Department were terminated by Superintendent Negley.

favor of the defendant Negley, and dismissed plaintiffs' complaint. Plaintiffs have appealed from that judgment.

The extensive and comprehensive trial court proceedings focused upon three questions: 1) whether the terminated plaintiffs occupied non-policy making positions; 2) if so, whether their affiliation with and allegiance to the Democratic Party was the cause of their termination; and 3) whether their termination, based upon their political association, was unconstitutional. The district court, in a soundly reasoned opinion, ruled squarely against plaintiffs on the first issue, and then proceeded to discuss but not directly decide the second and third issues.

In this court, plaintiffs first contend that "the finding of fact by the district court that plaintiffs Day, Pitts, Wallace, Bonvillain, Drury and Norrick [3] occupied policy making positions * * * was clearly erroneous, without substantial evidentiary support and contrary to the clear weight of the evidence."

Rule 52(a), Fed.R.Civ.P., provides that upon appellate review a district court's "findings of fact shall not be set aside unless clearly erroneous." A precise delineation of the scope of review under the "clearly erroneous" standard of Rule 52 is fraught with some difficulty; indeed, Judge Learned Hand observed:

> "It is idle to try to define the meaning of the phrase 'clearly erroneous'; all that can be profitably said is that an appellate court, though it will hesitate less to reverse the finding of a judge than that of an administrative tribunal or jury, will nevertheless reverse it most reluctantly and only when well persuaded."

United States v. Aluminum Co. of America, 148 F.2d 416, 433 (2d Cir. 1945).

Nevertheless, the Supreme Court constructed a definition of what constitutes clear error in United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), where Justice Reed, speaking for the Court, stated:

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*See generally* 5A Moore's Federal Practice ¶ 52.03[1] (1969).

■ This test frequently has been employed by this Circuit in determining whether findings were clearly erroneous. *See, e.g.*, Prince v. Packer Mfg. Co., 419 F.2d 34 (7th Cir. 1969); Yorke v. Thomas Iseri Produce Co., 418 F.2d 811 (7th Cir. 1969); G. R. Leonard & Co. v. Stack, 386 F.2d 38 (7th Cir. 1967); Krinsley v. United Artists Corp., 235 F.2d 253 (7th Cir. 1956). The appellate court must be especially circumspect in reviewing for clear error in the district court's findings when there was conflicting evidence on controverted issues of fact. *Cf.* Aunt Mid, Inc. v. Fjell-Oranje Lines, 458 F.2d 712 (7th Cir.), cert. denied, 409 U.S. 877, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972). In an opinion authored by Judge John Sanborn, a distinguished jurist, the scope of review of the findings of the trier of fact was delineated as follows:

> "The Court, upon review, will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. [Citation of cases omitted.] The power of a trial court to decide doubtful issues of fact is not limited to deciding them correctly. [Citation of cases omitted.] In a non-jury case, this Court may

---

3. Counsel for plaintiffs informed this court at oral argument that plaintiffs Holland and Abeel are no longer seeking relief. As found by the district court, Superintendent Negley's notice of discharge to Holland was withdrawn, and she continues to work for the Department as a bookkeeper-secretary. Abeel's position as Director of the Neighborhood Youth Corps was eliminated at the end of federal funding. *See* 365 F.Supp. at 230–231.

not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. [Citation of cases omitted.] In determining whether there is a sufficient evidentiary basis for the court's findings of fact, we must take that view of the evidence and the inferences deductible therefrom which is most favorable to the plaintiff."

Cleo Syrup Corp. v. Coca-Cola Co., 139 F.2d 416, 417–418 (8th Cir. 1943), cert. denied, 321 U.S. 781, 64 S.Ct. 638, 88 L. Ed. 1074 (1944).[4]

■ As a corollary to the foregoing, it is settled law that the complaining party has the burden to clearly demonstrate error in the findings. This is an especially strong burden where, as here, the findings are primarily based upon oral testimony and the trial judge has viewed the demeanor and credibility of witnesses. Chalk v. Beto, 429 F.2d 225, 227 (5th Cir. 1970); St. Louis Typographical Union No. 8 v. Herald Company, 402 F.2d 553, 557 (8th Cir. 1968) and cases cited therein.

■ Thus we come to the crucial question, whether plaintiffs have sustained their burden of showing that Judge Noland's finding that the individual plaintiffs were policy making employees was clearly erroneous under the standards above articulated. We are convinced they have not.

A review of the pertinent evidence bearing upon the policy/non-policy making issue is obviated in view of the extended and accurate analysis of the facts by the district court. The position of each individual plaintiff in the Department of Public Instruction, his salary, duties and responsibilities are detailed in the district court's opinion at 365 F. Supp. 227–230. Such analysis satisfies us that the court possessed a firm grasp of the issue and that its ultimate hold-

ing was the result of a careful study of the evidence and the applicable legal principles which must be considered in resolving this troublesome question inherent in cases involving the status of public employees.

To be sure, the individual plaintiffs were unanimous in proffering self-serving conclusions that they were non-policy making employees. See 365 F.Supp. at 228 n. 14. But, as the court observed, such conclusions were not borne out by plaintiffs' exhibits. Moreover, defendant Negley's testimony, if also self-serving, stood in direct contradiction. All of this led Judge Noland to conclude:

"From this statement of the facts, based upon the more credible and the uncontradicted testimony and exhibits, the conclusion is compelled that the discharged plaintiffs in fact occupied policy making positions with the Department of Public Instruction. Further, it is clear to the Court that the policy making character of these positions is even more pronounced under the current administration. Plaintiffs have asserted that they were so constrained by statute and regulation that they were mere administrative technicians. The Court cannot accept such a theory without necessarily reaching the strange conclusion that defendant Negley is also a non-policy making employee. Clearly, the policies here involved are not those of Congress, the committee which drafted the grant authorizing legislation, the Department of Labor, the Department of Health, Education and Welfare, but are the local policies of the Indiana Department of Public Instruction. These plaintiffs were not building employees, clerical workers, license examiners and the like. Their positions were highly responsible ones."

365 F.Supp. at 231.

To approve the conclusion reached by Judge Noland in this case is not to say that judicial creation of the line between policy makers and non-policy makers is

4. Cited with approval in Aunt Mid, Inc. v. Fjell-Oranje Lines, supra, 458 F.2d at 718.

easy. The *Lewis*. decision was breaking new ground in determining that certain patronage dismissals are prohibited by the first amendment. *See* Comment, Patronage Dismissals: Constitutional Limits and Political Justifications, 41 U. Chi.L.Rev. 297, 315 (1974). The policy/non-policy making distinction arose in the following statement of the majority opinion, authored by Judge Stevens and concurred in by District Judge Campbell:

"Plaintiffs properly do not challenge the public executive's right to use political philosophy or affiliation as one criterion in the selection of policy-making officials. Moreover, considerations of personal loyalty, or other factors besides determination of policy, may justify the employment of political associates in certain positions."

473 F.2d at 574. *Lewis*, however, concerned only "building employees, clerical workers, license examiners and the like." 473 F.2d at 563. As to such employees, "It is difficult to believe * * * that any such justification [considerations of political affiliation or personal loyalty] would be valid * * *." 473 F.2d at 574. It should also be noted that *Lewis* was an appeal from the trial court's granting of summary judgment in favor of defendant and not, as here, from a final judgment after full trial.[5]

Nevertheless, Judge Campbell's concurring opinion recognized the difficulties inherent in the new rule and offered several suggestions as to its application:

"The scope and complexity of the litigation problems created by our ruling are not lessened by our limiting its applicability to 'non-policy making' government personnel. It is simple enough to say that janitors, clerk-typists and elevator operators are 'non-policy making' employees, but how far up in the bureaucratic echelon can the distinction be judicially drawn? What about a janitorial supervisor, the director of a stenographic pool, a

personnel manager, a deputy assistant division head, a deputy director, or even a secretary to a top-echelon director or department head who may have access to confidential information? As Judge Stevens so aptly states, there may be instances when political affiliation constitutes a proper qualification for public employment, particularly in the selection and appointment of 'policy-making' officials. Indeed, no one has challenged the right of an elected official to appoint to such positions and for whatever reasons he deems proper, persons in whose loyalty and competence he has the highest confidence. The difficulty arises in attempting to fashion an appropriate and workable judicial standard for distinguishing between 'policy-making' and 'non-policy making' positions. In my judgment, the constitution would permit a public official to hire or dismiss on the basis of political association any employee engaged directly or indirectly in the formulation or implementation of the policies of the particular governmental office or agency. A more precise standard is difficult to articulate and thus the true impact of today's decision must necessarily await case by case determination."

473 F.2d at 578. *See also* Comment, Patronage Dismissals: Constitutional Limits and Political Justifications, 41 U. Chi.L.Rev. 297, 319–20 & n. 107 (1974).

Subsequent to the *Lewis* decision and in partial reliance thereon, a § 1983 action was brought in the Northern District of Illinois by Arlen Gould, former Assistant to the Director and Special Education Coordinator of the Governor's Office of Human Resources of the State of Illinois. Gould v. Walker, 356 F. Supp. 421 (N.D.Ill.1973). From the discussion of the facts in that case, suffice it to say that there appear several parallels between the duties and responsibili-

---

5. The issue in *Lewis* was also somewhat different. Plaintiffs alleged they were dis-

charged because they refused to *change* their political affiliation.

ties of Mr. Gould and the duties and responsibilities of the present plaintiffs.

District Judge Will concluded in *Gould*:

> "In attempting to fit Gould into the *Lewis* framework it can be initially and assuredly stated that he is a different type of governmental employee than the license examiners, janitors and clerks who comprised the plaintiff class in *Lewis*. Clearly, because of his undisputed responsibility and authority he is not covered by the strict holding of the *Lewis* case. In the terminology of Judge Stevens, the issue then is whether Gould is the type of governmental employee whose termination may be justified on the ground of political affiliation. We conclude that he is.
>
> We are hard pressed to articulate a more helpful standard than that propounded by Judge Campbell which allows termination on the basis of political affiliation if the terminated employee is 'engaged directly or indirectly in the formulation or implementation of the policies of the particular governmental office or agency.' On the basis of the essentially undisputed affidavits in the instant case, Gould is clearly engaged directly in the implementation of the policies of GOHR and engaged indirectly in the formulation of those policies. Therefore, the defendant public officials were constitutionally entitled to dismiss or terminate Gould on the basis of his political affiliation."

356 F.Supp. at 425.

So too, in the present case, plaintiffs were clearly engaged in the implementation of the policies of the State Department of Public Instruction and at least indirectly in the formulation of those policies.

Having determined that the district court's finding that plaintiffs occupied policy making positions is not clearly erroneous, we need not consider whether their terminations were motivated by political party affiliation and, if so, whether such terminations were violative of first amendment rights.

Judgment affirmed.