JOHN DYKE, IRWIN FRIEDMAN AND ANN N. WINNICKI, PLAINTIFFS, v. GEORGE J. OTLOWSKI, INDIVIDUALLY AND AS MAYOR OF CITY OF PERTH AMBOY; CITY OF PERTH AMBOY; JAMES GOUMAS; STEPHEN GOLEC AND LILLIAN HANDERHAN, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided December 7, 1977.

378

*Mr. Jack Wysoker*, attorney for plaintiffs Irwin Friedman and Ann W. Winnicki (*Messrs. Mandel, Wysoker, Sherman, Glassner & Weingartner*, attorneys).

*Mr. Oliver R. Kovacs*, attorney for George J. Otlowski, individually (*Messrs,. Kovacs, Anderson, Horowitz & Rader*, attorneys).

*Mr. Saul Wolfe*, attorney for George J. Otlowski, as mayor of Perth Amboy and all other defendants (*Messrs. Skoloff & Wolfe*, attorneys).

FURMAN, J. S. C. Plaintiffs Friedman and Winnicki contend their discharges from employment with the City of Perth Amboy were in violation of their rights to their own political beliefs and associations under the First and Fourteenth Amendments to the United States Constitution. After a change in the city administration as the result of a nonpartisan election in May 1976 (*N. J. S. A.* 40:69A–1 *et seq.*), Friedman was ousted by defendant Otlowski, the new Mayor, from his job as Senior Housing Inspector and Winnicki from hers as Supervisor of Senior Citizens Activities. Both were without Civil Service or other tenure.

Their action is in the Chancery Division for a declaratory judgment that their discharges from employment were invalid and for an injunction to compel reinstatement, remedies indistinguishable from prerogative writ relief (*R.* 4:69) against a municipality in the Law Division to vacate a wrongful discharge from employment. See, *e. g., Perrapato v. Rose*, 83 *N. J. Super.* 245 (App. Div. 1964). Plaintiffs also seek damages for violation of their civil rights under 42 *U. S. C. A.* § 1983.

Whether venue should have been transferred to the Law Division (*R.* 4:31(a)(2)) is without practical significance. The Chancery Division, having retained the action, may provide full legal as well as equitable relief. *N. J. Const.*

(1947), Art. VI, § III, par. 4; *Asbestos Fibres, Inc. v. Martin Laboratories, Inc.*, 12 *N. J.* 233, 239 (1953).

*Elrod v. Burns,* 427 *U. S.* 347, 96 *S. Ct.* 2673, 49 *L. Ed.* 547 (1976) is the controlling constitutional authority. According to the concurring opinion of two justices (at 375, 96 *S. Ct.* at 2690) a nonpolicymaking, nonconfidential governmental employee cannot be discharged from a job "that he is satisfactorily performing upon the sole ground of his political beliefs." The binding *stare decisis* effect of *Elrod* is limited to the concurring opinion; a plurality of three justices only joined in the opinion of the court. *Cf. Baker v. State,* 15 *Md. App.* 73, 289 *A.* 2d 348 (Ct. Spec. App. 1972), *cert.* den. 410 *U. S.* 969, 93 *S. Ct.* 1449, 35 *L. Ed.* 2d 705 (1973); *People v. Martin,* 192 *Misc.* 192, 83 *N. Y. S.* 2d 201 (Cty. Ct. 1948).

▮ Factual issues must therefore be resolved whether Friedman and Winnicki were nonpolicymaking and nonconfidential employees of the City of Perth Amboy who were discharged solely for political reasons. See *Rosenthal v. Rizzo,* 555 *F.* 2d 390 (3 Cir. 1977), sustaining a denial of summary judgment because of a factual issue whether an administrative assistant in the Industrial Relocation Department of the Philadelphia Redevelopment Authority was a nonpolicymaking and nonconfidential employee. The circumstance that the City of Perth Amboy municipal election was nonpartisan does not diminish or alter the constitutional protection against infringement of plaintiffs' political beliefs and associations.

The plurality opinion in *Elrod* alludes to the difficulty of factual determinations between what are policymaking and nonpolicymaking governmental employments:

No clear line can be drawn between policymaking and nonpolicymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number or responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibili-

ties may have only limited and well-defined objectives. An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals. [427 *U. S.* at 367–368, 96 *S. Ct.* at 2687]

·Plaintiffs in *Elrod* were employees of the sheriff's office. In *Illinois State Employees Union v. Lewis,* 473 *F.* 2d 561 (7 Cir. 1972), *cert.* den. 410 *U. S.* 943, 93 *S. Ct.* 1370, 35 *L. Ed.* 2d 609 (1973) a forerunner of *Elrod,* license examiners and building and clerical employees were held to be nonpolicymakers and thus shielded from political firing. Parallel holdings applied to the field coordinator for the training of adult educators under a federal program in *Morales v. Benitez,* 541 *F.* 2d 882 (1 Cir. 1976), and to deputy sheriffs in *Ramey v. Harber,* 431 *F. Supp.* 657 ,(W. D. Va. 1977).

Lower federal courts, in denying constitutional relief upon political discharges, have categorized as policymakers: an Assistant Secretary of Education in *Morales, supra;* consultants and coordinators in the Federal Projects Division of a state government (*Indiana State Employees Ass'n. v. Negley,* 365 *F. Supp.* 225 (S. D. Ind. 1973), aff'd 501 *F.* 2d 1239 (7 Cir. 1974)) ; the chairman of a State Liquor Control Commission (*Adams v. Walker,* 492 *F.* 2d 1003 (7th Cir. 1974)) ; the assistant to the Director and Special Coordinator of a Governor's Office of Human Resources (*Gould v. Walker;* 356 *F. Supp.* 421 (N. D. Ill. 1973)) ; and a regent of a State Museum (*Mitchell v. King,* 537 ·*F.* 2d 385 (10 Cir. 1976)).

In a two-day trial evidence was introduced concerning the political activities, the duties and responsibilities and the grounds of discharge of plaintiffs Friedman and Winnicki. Friedman was active in the political campagn to reelect the incumbent mayor, who was defeated by defendant Otlowski. He assisted in setting up headquarters and rallies. He manned

headquarters. After work hours he drove his car equipped with a loudspeaker. Winnicki attended rallies for the incumbent mayor, urged acquaintances to vote for him but was not otherwise politically active.

Winniciki had administrative responsibility for an ambitious senior citizens program in Perth Amboy. Broad objectives and guidelines were set by the Federal Government, which provided funding (42 *U. S. C. A.* § 3001 *et seq.*). Adhering to these she consulted from time to time with her superiors within the municipal government: the Director of Community Development, the Business Administrator and the Mayor. She was in charge of a senior citizens center where she supervised preparation of nutritional meals. She planned and directed social, recreational and cultural activities, as well as lectures and discussions on problems and concerns of the aged.

Within the federal guidelines Winnicki exercised discretion as to which programs and activities to promote and stress. Several witnesses testified to her resourcefulness and innovativeness. Her responsibilities were of broad scope and she formulated and carried out plans for the implementation of broad objectives.

The conclusion must be reached that Winnicki was a policymaking employee as Supervisor of Senior Citizens Activities, within the meaning of that term in *Elrod*. Her discharge by defendant Otlowski is therefore sustained as valid irrespective of political motives, within the latitude of an incoming municipal administration to select its own policymaking office-holders.

Friedman was Senior Housing Inspector, subordinate to the Building Inspector, the Director of Environmental Protection and the Mayor. After two years' employment he failed a Civil Service examination for Field Representative in the Housing Department in 1973, then was appointed temporarily Chief Housing Inspector, a job title later changed to Senior Housing Inspector. No Civil Service examination for that job was held thereafter.

Friedman's duties and responsibilities included inspections, chiefly of multiple dwellings, issuance of notices of violation or summonses, investigation of complaints and preparation and review of reports. He conceded on cross-examination some area of discretion as to priority of inspections. Otherwise, according to his testimony, his decisions whether there were housing violations, whether and how to prosecute and whether violations were abated were in accordance with regulatory standards defining violations which involve some technical knowledge, but no discretion, to apply.

Defendant Otlowski testified to a groundswell of complaint and protest about the Housing Department preceding his administration. But the Mayor was unable to identify anyone who spoke to him unfavorably about Friedman or the performance of his specific duties. The chief complaint about the Housing Department centered on suspected discrimination in the issuance of certificates of occupancy prior to resale of residential properties. The responsibility for certificates of occupancy was not Friedman's but the Building Inspector's, for whom Friedman filled in only a few times a year.

At the time he discharged Friedman in August 1976 Otlowski had not heard of *Elrod,* a decision of June of that year. He testified at the trial that he discharged Friedman because he had failed a Civil Service examination for a lower job title in the Housing Department, because he did not trust him and because of the widespread complaints of unevenhanded enforcement of housing regulations. He denied that the firing was political.

As Senior Housing Inspector, Friedman had no policymaking role in his own inspection and enforcement activities. He was a technician applying regulatory standards with minimal discretion. Under *Elrod* he is held to have been a nonpolicymaking as well as nonconfidential employee who was entitled to protection against a solely political discharge.

██ Apart from the constitutional issue the reasons assigned for the discharge of Friedman would be sufficient. The plurality opinion in *Elrod* cites insubordination and poor job performance as grounds for the discharge of a non-policymaking governmental employee. In this State, barring an infringement of constitutional rights, a nontenured governmental employee may be discharge without cause. *English v. College of Medicine and Dentistry of N. J.*, 73 *N. J.* 20 (1977).

██ The factual finding is made that Friedman's discharge was political — specifically that, although Otlowski considered the other reasons he testified about, he would not have discharged Friedman except for his open campaigning in support of the rival candidate for Mayor. His firing was therefore upon the sole ground of his political beliefs and associations.

Injunctive relief is granted to compel Friedman's reinstatement. Defendant City of Perth Amboy is ordered to pay him back pay as Senior Housing Inspector, less his earnings and the reasonable value of his services rendered for his son's photography store, since his discharge. *N. J. S. A.* 40A:9–172; *Telesnick v. Newark*, 63 *N. J.* 221, 225 (1973); *Ross v. Hudson Freeholders*, 90 *N. J. L.* 522, 528 (E. & A. 1917); Note, 15 *Rutg. L. Rev.* 516, 517 (1961).

██ Friedman's count for damages under the Civil Rights Act is dismissed against the city, which is immune under the act (*Mt. Healthy City Bd. of Ed. v. Doyle,* 429 *U. S.* 274, 97 *S. Ct.* 568, 50 *L. Ed.* 2d 471, 478 (1977); *City of Kenosha v. Bruno,* 412 *U. S.* 507, 513, 93 *S. Ct.* 2222, 37 *L. Ed.* 2d 109 (1973)) and against Otlowski because of his good faith reliance on the law preceding *Elrod,* as he understood it, that Friedman could be discharged without cause. *Wood v. Strickland,* 420 *U. S.* 308, 95 *S. Ct.* 992, 43 *L. Ed.* 2d 214 (1975); *Endress v. Brookdale Community College,* 144 *N. J. Super.* 109 (App. Div. 1976).