Marvin C. JONES

v.

**Hunter M. KELLY et al.**

Civ. A. No. 603–71–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 14, 1972.

JeRoyd Green, Jr., Greene, Buxton & Poindexter, Inc., Richmond, Va., for plaintiff.

Henry M. Jarvis, Asst. City Atty., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff seeks money damages and injunctive relief under 42 U.S.C. § 1983. Jurisdiction is conferred on the Court by 28 U.S.C. § 1343(3) and (4).

The facts as found by the Court disclose as follows:

The plaintiff, who prior thereto had been a part-time employee, was on September 19, 1970, appointed by Kermit V. Rooke, Judge of the Juvenile and Domestic Relations Court of the City of Richmond, to a full time position as a children's supervisor in the City Juvenile Detention Home. At the time of his appointment he was informed by supervisory personnel that from time to time, by reason of extraordinary absences for sick leave, vacations, etc., it would be necessary for him to work a shift in addition to his regularly assigned one.

On May 26, 1971, the defendant Kelly, Assistant Superintendent of the Juvenile Detention Home, posted a list of employees who would be required to work shifts at the Home in addition to their regular ones. This list called for the plaintiff, who regularly worked a 12:30 a. m. to 8:30 a. m. shift, to work on Wednesday, June 2, 1971, from 8:30 a. m. to 4:30 p. m. Under ordinary circumstances June 2d would have been his day off.

On Friday, May 28, 1971, plaintiff, having learned that he had been posted to work the day shift on June 2d, informed Kelly that he would be unable to work such shift by reason of a prior commitment to work that day as a substitute teacher in the Richmond Public School System. He stated, and the record reveals, that he had arranged for someone else to work the shift for him. Kelly was not amenable to plaintiff's plan and informed him that he would have to work the shift personally, and failure to do so would result in dismissal. Kelly's superior, the defendant Moore, concurred in this ultimatum.

On the appointed day plaintiff did not appear to serve the extra shift, and he was as a consequence discharged. This suit followed.

Plaintiff's theory as to his right to relief is essentially three-pronged. He first contends that, under the applicable provisions of the Charter of the City of Richmond he was, prior to discharge, entitled to notice and a hearing. If he was not so entitled, plaintiff contends that the statutory classification which disallowed him a hearing acted to deny him equal protection of the laws. Finally, plaintiff contends that the due process clause of the fourteenth amendment to the Constitution of the United States mandates that he be given a hearing prior to dismissal. In his original complaint, plaintiff alleged that his dismissal was predicated on racial factors. No evidence was introduced sufficient to support such contention, however, and hence the Court concludes that there is no merit to same and deems it unnecessary to make further reference thereto.

While plaintiff's contention that provisions of the Richmond City Charter require that he be given a hearing prior to dismissal is determined by State law, the doctrine of pendente jurisdiction in reference to this claim requires that this Court decide the issue. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Section 19.18 of the Richmond City Charter gives authority to municipal judges to appoint employees authorized by the City Council, which is the governing body. Such employees hold office at the pleasure of the appointing judge, subject to the provisions of Chapter 9 of the City's charter. Chapter 9 divides employees into two classes, "unclassified" and "classified." Section 9.-08, providing for unclassified service employees, includes a number of higher administrative positions, most of which are normally involved in general policy decision-making. It does not specifically include children supervisors of the Juvenile Detention Home. Section 9.08 is a general provision and includes within the classified category all positions "not specifically included by the preceding section and the unclassified services."

The principal difference between classified and unclassified services is that persons included in the former group

have certain procedural rights which must be granted before termination of employment. Section 9.08 provides the following:

. . . upon the conclusion of the probationary period no member of the classified services shall be suspended for more than sixty days, reduced in rank or pay or removed except after notice in writing of the grounds of the proposed disciplinary action and an opportunity to be heard thereon by the Personnel Board. If within five days following the service of such notice an employee shall deliver to the office of the chairman of the Personnel Board a written request for a hearing, then the Board shall fix a time and place for such hearing, which may be public at the option of the employee, to be held within a reasonable time after the receipt of such request, and notify the employer thereof . . .

■ Plaintiff contends that he fits within the classified category and accordingly is entitled to the procedural rights accorded by § 9.08. Concluding that any such application of § 9.08 of the Charter would, in the instant case, conflict with § 16.1–145 of the Code of Virginia, 1950, plaintiff's reliance on same is, in the Court's opinion, misplaced.

■ State law as enunciated in § 16.-1–145 empowers the Judge of the Juvenile Court to appoint ". . . employees as may be necessary for the proper conduct of the court."[1] The section, significantly, further provides that the employees shall serve at the pleasure of the Judge. It is apparent, therefore that the State law, which supercedes any conflicting provisions of the City Charter, was designed to grant wide discretion to the juvenile court judge in his employment practices. It was not intended that a Juvenile Court Judge be constrained, within constitutional limits, in the determination of who shall or shall not be employed in the performance of his responsibility to see to the proper conduct of the Court.

To accord to the plaintiff herein the benefit of the provisions of the City Charter as enunciated in § 9.08 would, to a great extent, nullify the wide discretion of the Juvenile Court Judge as contemplated by State law.

Virginia Code § 16.1–1 codifies a well established principle of municipal law in that it provides for the repeal, to the extent necessary, of all provisions of municipal charters inconsistent with State law; hence plaintiff's contention as to this facet of the case fails.

Plaintiff next contends that the failure to have accorded him a hearing deprives him of equal protection of the law because, so his argument goes, certain other categories of city employees are treated differently before being discharged. His contention does not challenge the basic distinction between classified and unclassified employees, but is succinctly stated as granting the protection of a hearing to "a vast number of Richmond City employees _ _ _ while persons who work for the juvenile courts, also City employees, do not have such protection."

■ Before plaintiff can prevail in this claim of denial of equal protection of the laws under the Fourteenth Amendment to the Constitution, his burden is to establish that the classification drawn by the applicable legislation is without rational basis, and this burden is a heavy one. Levy v. Louisiana, 391 U.S. 68, 71, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).

■ The uniqueness of court operations, and especially juvenile courts whose very purpose is to foster the welfare of children who come before it to the end that the humane purposes of the remedial legislation which created the special courts is fully effectuated, requires the exercise of wide discretion. The Virginia legislature's desire and ef-

1. This Code Section, by act of the 1972 General Assembly of Virginia, expires on June 30, 1973.

forts to afford this discretion to the Juvenile Court Judges in the employment practices utilized in the operation of the courts, creates a rational basis for the distinction in the practices utilized in hiring and discharging of court employees vis à vis other municipal employees. Having so found, plaintiff's contention in this regard must fail.

■ The third and final contention is premised on an alleged violation of the due process clause of the Fourteenth Amendment. Admittedly, as he alleges, plaintiff was not accorded a hearing prior to his discharge from public employment. Nevertheless, the mere fact of public employment in and of itself is not sufficient to require a due process hearing prior to discharge, unless such public employment entailed a constitutionally protected interest such as liberty or property.

■ Public employees serving, as in the instant case, at the will and pleasure of a municipality or an officer thereof, are subject to summary discharge with or without cause, so long as such discharge is not in retribution for an exercise of some constitutionally protected right. See Hodgin v. Noland, 435 F.2d 859 (4th Cir., 1970); Brown v. Hirst, 443 F.2d 899 (4th Cir., 1971).

■ Plaintiff argues that his public employment was such as to entail a constitutionally protected interest, which precluded a discharge from employment without a hearing.[2] This issue, as those preceding, must be resolved against the plaintiff in light of the opinion rendered in the case of Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) by the United States Supreme Court.

*Roth* involved a challenge by a nontenured professor to the failure of a state university to renew his contract. Speaking for the Court, Mr. Justice Stewart directed his inquiry to the basic question of whether plaintiff had a "liberty" or "property" interest protected by the due process clause. He emphasized that such a determination must be made before a court can weigh the various interests of the parties to determine what *form* of procedures are necessary, and concluded that the plaintiff therein did not have any interest protected by the due process clause.

Mr. Justice Stewart suggested that "[t]here might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated." 408 U.S. at 573, 92 S.Ct. at 2707: *Roth,* so the Court concluded, was not such a case.

As in *Roth,* there is no indication that plaintiff's discharge here will stigmatize him or create any other disability that might foreclose future employment. He argues that the City of Richmond enjoys a job monopoly on the type of work in which he is engaged. Even if this is accepted as accurate, it does not appear to this Court that preventing plaintiff from engaging in exactly the same type of work in exactly the same locality rises to an impairment of his liberty. It is doubtful, for example, that petitioner Roth could have found exactly the same sort of position in the same City that he had held with the State University.

Moreover, it does not appear that plaintiff has any property interest in his job:

> To have a property interest in a benefit [job], a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. *He must, instead, have a legitimate claim of entitlement to it.* Board of Regents of

2. The substantial interest concept is indeed viable and has been recognized in a number of cases involving public employment. See, e. g., Cafeteria and Restaurant Workers Union Local 473, A. F. L.–C. I. O. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961);

Bernbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966), all of which have precedential value; nevertheless for reasons asserted in the main text hereof the Court concludes that this case must be decided within the principles of Board of Regents of State Colleges v. Roth, *infra.*

State Colleges v. Roth, *supra*, 577, 92 S.Ct. 2709 (emphasis added).

Thus, a tenured professor has such a claim, Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), while an untenured one does not. Plaintiff manifestly has no claim to his work position in this case. He held it pursuant to the pleasure of the judge of the Juvenile Court and has failed to make a showing of any sort of entitlement, direct or indirect, statutory or otherwise, to the position. Accordingly, the Court holds that plaintiff's position of employment does not create an interest protected by the due process clause and that he had no constitutional right to a hearing prior to being discharged.

Judgment will be entered for the defendants.