Dr. Valeriano SUAREZ, Plaintiff-Appellant,

v.

Edward T. WEAVER, Director, State of Illinois Department of Public Aid, Defendant-Appellee.

No. 72-1656.

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1973.

Decided Sept. 14, 1973.

Wayne Giampietro, Chicago, Ill., for plaintiff-appellant.

Jerrald Abrams, William J. Scott, Chicago, Ill., for defendant-appellee.

Before PELL and STEVENS, Circuit Judges, and REYNOLDS, District Judge.*

REYNOLDS, District Judge.

Once again this court is asked to decide whether the Constitution requires a state to provide an administrative hearing to an individual whose services it no longer desires to purchase. Plaintiff Valeriano Suarez is a doctor who was appointed a participating physician in the medical assistance program of the Illinois Department of Public Aid. When the defendant discharged him from the program on the basis of certain charges, he began this action seeking an administrative hearing. The district court concluded that his interest in continued participation in the program did not merit any procedural due process protection and dismissed his action. We reverse.

Plaintiff began participating in the medical assistance program in February 1971. Under the program plaintiff treated persons receiving assistance from the Department of Public Aid and was reimbursed for his services. Because he had once before been suspended from the program, his status was probationary, and in December 1971, that status was extended for six months.

Then on March 2, 1971, without any prior warning, plaintiff received a letter from defendant informing him that his participation in the program had been terminated. The letter also gave the following reasons:

"At its meeting of February 26, 1972, the State Medical Advisory Committee reviewed a further report of your practices which was brought to their attention because of the large volume of narcotic and dangerous type drugs you have been prescribing for your patients. The Committee took particular note of the fact that in most instances you prescribed the maximum quantities of these drugs, that in many cases both Doriden and Ritalin prescribed on the same day for the same patient, and that a large proportion of your patients reside at great distances from where your office is located.

"On the basis of serious irregularities in your practices in the past in providing services to public assistance recipients and in the light of this recent report which indicates excessive utilization of certain drugs, the Committee recommended that your status as a participating physician be terminated."

It was confirmed at oral argument that the defendant relayed his action and these charges to the Illinois Department of Registration and Education, the agency in charge of licensing and disciplining physicians under the Illinois Medical Practice Act. Ill.Rev.Stats.Ann. Ch. 91 (1966).

---

* Chief District Judge John W. Reynolds of the Eastern District of Wisconsin is sitting by designation.

## I.

Plaintiff argues forcefully that by informing the Department of Registration and Education of the reasons for his discharge, defendant seriously imperiled his reputation. Though that Department has not yet taken formal steps to discipline plaintiff, the charges will remain in its files. Should a potential employer or other interested person inquire as to plaintiff's history or his standing in the state, there is no reason to believe the Department would not divulge these charges. See Ill.Rev.Stats.Ann. Chs. 91, 127 § 55 ffl. (1966).[1]

 There is little doubt but that a person's interest in his reputation is sufficient to trigger procedural due process protection. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972); Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Weiman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). It is true that the injury to plaintiff's reputation seems more speculative than the injury threatened in *Constantineau* in that the charges were not released to the public at large and thus may not reach as wide an audience as the charges made through the posting procedure condemned in that case. But here the charges do reach those, or can reach those, who are interested in the plaintiff's professional reputation. When damaging charges are released by public agencies to other public agencies which may circulate them further, the mere possibility that the accused's reputation may escape injury is not critical.

In *Updegraff*, for example, the Supreme Court took judicial notice of the injury to plaintiff's reputation which would probably result from the charge of belonging to a subversive organization and then concluded that due process protection was warranted. As in *Constantineau*, no evidence of actual injury to plaintiff's reputation was required.

The distinction between charges which trigger procedural protection and those that do not has yet to be drawn with any degree of precision. See, e. g., Carpenter v. City of Greenfield School District No. 6, 358 F.Supp. 220 (E.D.Wis. 1973); Hadjuk v. Vocational, Technical and Adult Education, 356 F.Supp. 33 (E.D.Wis.1973); Whitney v. Board of Regents, 355 F.Supp. 321 (E.D.Wis. 1973). Nonretention or dismissal in and of itself will undoubtedly impugn the reputation of the person to some extent. The Supreme Court, however, has made it clear that such nonretention per se is seldom serious enough to warrant a hearing. Board of Regents v. Roth, *supra*, 408 U.S. at 574 n. 13, 92 S.Ct. 2701. Likewise many adverse comments may not be of serious enough consequence to warrant a hearing. Any tendency to require hearings on the basis of unpublished charges must be tempered by the knowledge that the ultimate result will be to discourage giving reasons regardless of the circumstances. Yet silence will often work greater damage to the dismissed person's reputation than the worst of reasons. On the other hand, past cases establish that charges which may become public and which suggest immorality, dishonesty, mental deficien-

---

1. Defendant agreed at oral argument that the charge of routinely prescribing the maximum quality of narcotics and the charge of prescribing both Doriden and Ritalin on the same day for the same patient raise serious questions about plaintiff's sense of responsibility and his compliance with the ethical standards of the profession. Hence, we need not decide whether charges bearing only on certain aspects of his professional performance or his personal life style would threaten the kind of injury to his reputation that warrants procedural protection. Shirck v. Thomas, 486 F. 2d 691 (7th Cir., decided April 6, 1973) (decision on remand); Lipp v. Board of Education of Chicago, 470 F.2d 802, 805 (7th Cir. 1972).

cy, or abnormal emotional imbalance invoke due process considerations:

> "Yet certainly where the State attaches a 'badge of infamy' to the citizen, due process comes into play. [Citation omitted.] '[T]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.' [Citation omitted.]" Wisconsin v. Constantineau at 437, 91 S.Ct. at 510.

Whatever line-drawing problems may arise in future cases, however, we are satisfied that the charges here sufficiently implicate plaintiff's reputation as a practicing doctor and as a citizen.

## II.

In basing this decision on the likely injury to plaintiff's reputation we do not decide the many other issues raised. For instance, we do not decide whether plaintiff's property interest in continued participation in the program warrants procedural protection.[2]

We express no view on the merits of the claim but hold only that the plaintiff's claim is cognizable in the federal action he has brought. Meredith v. Allen County War Memorial Hospital Commission, 397 F.2d 33 (6th Cir. 1968). The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

2. Even if plaintiff's interest in his position as a probationary practitioner in the medical assistance program imposed no constitutional requirements on defendant, Rule 1.09 of the defendant's own rules and regulations requires the defendant to provide plaintiff "an opportunity to offer an explanation of his conduct." Illinois Department of Public Aid's

Categorical Manual, Article I, Medical Assistance, Rule 1.09. The existence of Rule 1.09 was not brought to the attention of the court below.

