**Stuart E. HIRSCH**

v.

**Samuel A. GREEN, Jr., State's Attorney for Baltimore County, and Walter Richardson, Finance Officer for Baltimore County.**

Civ. A. 73–857–N.

United States District Court,
D. Maryland.

Dec. 28, 1973.

---

Roland Walker, Baltimore, Md., for plaintiff.

Patrick A. O'Doherty, Baltimore, Md., for defendant Samuel A. Green, Jr.

R. Bruce Alderman, County Sol., Baltimore County, and Harry S. Shapiro and Julius W. Lichter, Asst. County Sols., for defendant Walter Richardson, Finance Officer for Baltimore County.

NORTHROP, Chief Judge.

Plaintiff, Stuart E. Hirsch, the former Deputy State's Attorney for Baltimore County, seeks injunctive and declaratory relief, and damages for his allegedly improper dismissal. The case is before this Court on the motion to dismiss by defendant Walter Richardson, Finance Officer for Baltimore County, and the motion to dismiss and/or for summary judgment by defendant Samuel A. Green, Jr., State's Attorney for Baltimore County.

Plaintiff predicates jurisdiction of his action upon Title 42, U.S.C. § 1983, Title 28, U.S.C. § 1343(3), and the first and fourteenth amendments to the United States Constitution.

In his complaint, plaintiff asserts several bases for the relief sought. First, he alleges that his termination by defendant Green was in retaliation for his testimony before a grand jury investigating said defendant's activities. This constituted a denial of plaintiff's constitutionally protected right of freedom of speech. Plaintiff also contends that he possessed a vested property right in his employment. Therefore, his discharge without prior notice or hearing violated procedural due process. In support of this proposition, he cites a promotion and several raises in pay and states that a $1,000 raise, approved by defendant Green in June, was rescinded following plaintiff's grand jury testimony. Finally, he claims a deprivation of liberty in that his widely publicized dismissal had substantially and irreparably damaged his reputation, both professionally and personally.

Defendant Green concedes that in discharging plaintiff he did not set forth any reasons for the termination, nor did he afford any opportunity for a hearing. He, however, contends that plaintiff was discharged for what might be best summarized as unprofessional conduct. Having discovered that plaintiff had lied to him on prior occasions, defendant concluded that Hirsch had lied again when the grand jury returned an indictment against him. Green also argues that the plaintiff had not been deprived of a vested property right since he served as Deputy State's Attorney at the pleasure of the defendant and could be fired at any time. Defendant Green cites plaintiff's deposition as showing the latter was aware that he was not a permanent or merit employee. Consequently, plaintiff was not entitled to notice and hearing. Lastly, he maintains that there has been no deprivation of liberty because plaintiff's reputation had not been impugned or damaged.

In his motion to dismiss, defendant Richardson states that in his capacity as Finance Officer for Baltimore County he owes no duty to the plaintiff, and thus should not be joined in this suit. Under the County Charter and Code, said defendant is to issue a payroll check only upon receipt of certification that an individual is employed by a government department. This duty is only ministerial in nature and defendant does

not possess the power to act contrary to the certification presented to him. In response, plaintiff maintains that defendant is "materially interested" in the suit as Finance Officer. In addition, if said defendant were excused from the proceedings the result would be a multiplication of unnecessary litigation. If defendant Richardson were dismissed but the court lost jurisdiction over Green, suit would have to be reinstituted against the Finance Officer. Finally, the joinder of Richardson does not confuse the issues to be tried as the complaint is directed solely at defendant Green.

## I.

The case is clearly governed by the Supreme Court's decisions in *Roth* and *Sindermann*. A review of these two cases is necessary at this juncture. In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a professor was hired by a state university to teach for one academic year. Upon completion of his term, he was informed without explanation that he would not be rehired for the ensuing year. A state statute provided that all state university teachers initially would be employed on probation and that only after four years of continuous service would they achieve permanent employment with procedural protection against separation. Acknowledging that he was without tenure, plaintiff brought an action claiming deprivation of his rights as secured by the fourteenth amendment. Specifically, he alleged infringement of: (1) his right of free speech in that the true reason for his termination was his criticism of university administration; and (2) his right to procedural due process as the university failed to advise him of the reason for its decision. The High Court ruled that under the circumstances the professor was not deprived of any constitutional rights. "The requirements of procedural due process apply only to the deprivation of interests encompassed with the Fourteenth Amendment's protection of liberty and property." *Id*. at 2705. The Court found that plaintiff did not have a sufficient interest in liberty or property to warrant protection. However, Justice Stewart, speaking for the majority, indicated that there were certain circumstances which would implicate interests in liberty and necessitate a hearing:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1970) [Other citations omitted.]

> Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. . . . Had it done so, this, again, would be a different case. For "[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury . . . ." [Citations omitted.] [92 S.Ct. at 2707].

Elaborating further, the Court said that there was no deprivation of liberty where an individual was simply not re-hired in one job but remained free to seek another. Proof that non-retention in one job might make an individual somewhat less attractive to other employers was not sufficient to establish the kind of foreclosure of opportunities amounting to deprivations of "liberty" and "property."

In the companion case of Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), a professor had

been employed in a state college system for ten successive years under annual contracts. Without explanation or hearing, the Regents declined to renew his employment for the next term. Plaintiff then brought an action raising the same points as in *Roth*. The initial issue confronting the Court was whether the lack of contractual or tenure right to reemployment *alone* defeated a claim that reemployment violated the first and fourteenth amendments. In holding that it did not, the Court discussed the first amendment rights vis-a-vis public employees:

> . . . this Court has made [it] clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some . . . upon which the government may not act. It may not deny a benefit to a person on the basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech.

> [M]ost often, we have applied th[is] principle to denials of public employment. [Citations omitted.] We have applied the principle regardless of the public employee's contractual or other claim to a job. [92 S.Ct. at 2697–2698].

The Court noted that the plaintiff had alleged that his termination was the result of his testimony before the state legislature and other public criticism of the school administration. Additionally, he had asserted that this public criticism was within the first and fourteenth amendments' protection of freedom of speech. The Court concluded that "[p]lainly these allegations present a *bona fide* constitutional claim," citing Pickering v. Bd. of Education.[1]

Recognizing the plaintiff's interest in liberty, the Court also found that he had a property interest in his continued employment at the college. Plaintiff had stated that this interest, although not secured by formal contractual tenure, was secured by a binding understanding fostered by the administration. Finding that the professor indeed had a sufficient property interest necessitating procedural protection, the Court then set out to define that interest:

> . . . "property" interests subject to procedural due process protection are not limited by a few, rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." [Citing *Roth*.] A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. [92 S.Ct. at 2699].

The Court emphasized that an explicit contractual provision was not necessary to establish a "property" interest in employment:

> [T]he law of contracts . . . long has employed a process by which agreements, though not formalized in writing, may be "implied." [Citation omitted.] Explicit contractual provisions may be supplemented by other agreements implied from the "promisor's words and conduct in the light of surrounding circumstances." [Citation omitted.] And, "[t]he meaning of [promisor's] words and acts is found by relating them to the usage of the past." [92 S.Ct. at 2699].

The Court rejected the notion advanced by the circuit court that mere "subjective expectancy" of employment was protected by procedural due process. It cautioned that the mere proof of a property interest was not sufficient to command reinstatement. Such proof, however, did obligate an institution to grant a hearing so that a plaintiff could be advised of the grounds for non-retention and challenge their sufficiency.

1. 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

## II.

Several decisions have issued from the Fourth Circuit subsequent to the *Roth* and *Sindermann* opinions, mostly concerning school teachers rather than public employees. Generally, the court has reiterated the forementioned definitions with little added interpretation. In Johnson v. Fraley, 470 F.2d 179 (4th Cir. 1972), the court held that a school teacher whose employment was terminated after twenty-nine years of service stated a cause of action under the fourteenth amendment and was entitled to notice and hearing:

> . . . we find *Sindermann* and *Roth*, supra, both declaring that injury to professional reputation or livelihood caused by an abrupt termination of an engagement of substantial longevity warrants an inquiry upon whether the means pursued satisfied constitutional due process. These decisions vouch that continuous employment over a significant period of time . . . can amount to equivalent tenure. When it does, dissolution of the relationship requires prior "notice and an opportunity to be heard," or else due process is wanting. [470 F. 2d at 181].

*Accord,* Kota v. Little, 473 F.2d 1, 3 (4th Cir. 1973).

Of greater significance to the instant case is McNeill v. Butz, 480 F.2d 314 (4th Cir. 1973), handed down this past summer. In that case, two federal non-civil service employees, not under any employment contract, were discharged from the Agricultural Stabilization and Conservation Service and were permanently disqualified from future employment with that agency. Plaintiffs were in essence accused of fraud and improper retention of benefits. Finding that the plaintiffs had suffered a deprivation of liberty, Judge Winter wrote:

> These relatively serious accusations in effect allege dishonesty and thereby impugn the plaintiff's good name, reputation, honor and integrity. *Roth* teaches that the fifth amendment

> would enjoin the government from so sitgmatizing a dismissed employee without providing at least rudimentary due process, unless, of course, . . . the dismissed employee admits his guilt. [Citations omitted.] [480 F.2d at 320].

The court declined to rest its decision solely on the loss of reputation. It believed that the permanent disqualification from the government agency constituted such a stigma as to not only foreclose other government employment opportunities but to prejudice private employment prospects. The court, however, rejected the plaintiffs' contention that they had been deprived of a property right:

> Neither had an employment contract. Neither had any form of tenure. Although McNeill had served full time for ten years and Canady for four, longevity alone does not establish tenure. [Citations omitted.] Neither plaintiff presented a scintilla of evidence demonstrating the requisite *mutual* understanding with ASCS which might have supported an entitlement to reemployment. [480 F.2d at 320–321]. [Emphasis supplied.]

The *McNeill* case appears to answer the question as to whether a public employee possesses a property interest in his employment. Prior to *Roth* and *Sindermann*, the Fourth Circuit had clearly held that where a municipal employee served at the will and pleasure of a municipality, there being no contractual or other arrangement limiting the right of termination, he was subject to summary discharge so long as it was not in retribution for an exercise of some constitutionally protected right. Brown v. Hirst, 443 F.2d 899, 900 (4th Cir. 1971); Hodgin v. Noland, 435 F.2d 859, 860 (4th Cir. 1970). Except for *McNeill*, the Circuit Court has not rendered any decisions subsequent to the two Supreme Court cases concerning public employees, although in Grimes v. Nottoway County School Board, 462 F.2d 650, 652 n. 3 (4th Cir. 1972), *Hodgin* and *Brown*

were footnoted with the implication that they remained valid.

Two lower courts, however, have explicitly stated that this is still the rule. In Jones v. Kelly, 347 F.Supp. 1260 (E.D.Va.1973), plaintiff was appointed by a juvenile court judge to serve as a supervisor in a children's detention home. Because he refused to work certain hours, plaintiff was subsequently discharged. A state statute empowered the judge to appoint employees "as might be necessary for the proper functioning of the court." It also stated that such employees served at the pleasure of the judge. In holding that plaintiff was not entitled to procedural due process protection, Judge Merhige relied on the *Hodgin* and *Brown* decisions. Responding to the contention that plaintiff had a property interest in his job as defined by *Roth,* the court found that he had no claim to the position because it was held pursuant to the pleasure of the juvenile court judge. There was no showing of any sort of entitlement, statutory or otherwise, to that employment. This same conclusion was reached in Bean v. Darr, 354 F.Supp. 1157 (M.D.N.C.1973), where a sanitarian with the county health department was dismissed for insubordination. The county's personnel policy stated that "the county manager may remove . . . employees as he may appoint . . . ." There was no contractual or administrative limitation on the county manager's right of termination. The district court concluded that the plaintiff served at the pleasure of the county manager and was subject to summary dismissal. His interest was not of such a protected nature as to require a procedural due process hearing.

Other jurisdictions have been in accord with these holdings. In the area of violation of constitutionally protected rights, *see*: Lewis v. Spencer, 468 F.2d 553 (5th Cir. 1973) evidentiary hearing ordered for teacher who alleged discharge was in retaliation for appearance before state legislative committee); Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center et al.,

356 F.Supp. 500 (E.D.Pa.1973) (nurse discharged from state hospital because of published statements critical of patient care entitled to hearing). With regard to property interests in employment, *see*: Wilderman v. Nelson, 467 F.2d 1173 (8th Cir. 1973). As to implications of an interest in "liberty," *see*: Suarez v. Weaver, 484 F.2d 678 (7th Cir. 1973). In *Suarez,* the Seventh Circuit attempted to determine what "charges" would give rise to procedural due process. There a doctor, who was employed in a probationary status under a state program, was discharged without prior notice. Among the reasons given for the termination was the physician's excessive prescription of dangerous drugs. The court found that the doctor's reputation as a practicing physician had been sufficiently implicated as *to require procedural due process.* It acknowledged that the distinction between charges which trigger procedural protection and those that do not had yet to be drawn with any degree of precision. But the court believed that "past cases establish that charges which may become public and which suggest immorality, dishonesty, mental deficiency or abnormal emotional imbalance invoke due process considerations." [484 F.2d at 680].

The Fourth Circuit has also discussed dismissal and summary judgment with regard to the issue of discharge of employees. In Chitwood v. Feaster, 468 F.2d 359 (4th Cir. 1972), plaintiffs alleged that their contracts were not renewed in retaliation for conduct protected by the first and fourteenth amendments. The district judge entered summary judgment against the plaintiffs because they had introduced no hard evidence to support their general assertions. In reversing this order, Judge Haynsworth noted that the teacher's claim in *Sindermann* was also unsupported by concrete evidence. However, "the concurrence of protected speech . . . and the termination of the employment contract seem to be enough, in the view of the Supreme Court, to occasion an inquiry to

determine whether or not the failure to renew the contract was in fact caused by the protected speech." [468 F.2d at 361].[2] *See also* United States v. Nansemond County School Board, 351 F.Supp. 196, 202 (E.D.Va.1972).

Again, other courts have shared the Fourth Circuit's view. Where the complaint alleges that individuals have not been rehired because of constitutionally impermissible reasons, that allegation is sufficient to state a cause of action cognizable under § 1983. Though such pleading does not in fact prove that termination was the result of the exercise of first amendment rights, the allegation is sufficient to entitle plaintiffs to present evidence to the district court and to obtain relief if they prevail. Toney v. Reagan, 467 F.2d 953, 956 (9th Cir. 1972). And where there is a genuine dispute regarding a free speech claim, summary judgment, without full exploration of this issue, is improper. Wilderman v. Nelson, 467 F.2d 1173, 1176 (8th Cir. 1973).

### III.

▇ It is clear that the plaintiff does not have a property interest in his job as Deputy State's Attorney to warrant procedural due process protection. From all indications, he serves at the will and pleasure of the elected State's Attorney. Plaintiff has proffered nothing, statutory or otherwise, to refute this conclusion. In fact, his deposition substantiates this point as he stated that it was his belief that he could be fired at any time. Consequently, there is not even a "subjective expectancy" by the plaintiff that he was entitled to the position. The mutual understanding required by *Sindermann* was totally lacking from the outset. That the plaintiff received several increases in remuneration during his employment has not been sufficient to overcome this conclusion. It has clearly been held that a public employee who serves at the pleasure of a government or official does not possess a property right in his job. Brown v. Hirst, *supra;* Hodgin v. Noland, *supra;* Jones v. Kelly, *supra;* Bean v. Darr, *supra.* Plaintiff is such an employee and consequently is not entitled to a hearing on this ground.

▇▇ However, this Court is of the opinion that plaintiff has stated a cause of action under § 1983 with regard to his first amendment claim. The "firing" occurred shortly after plaintiff's grand jury testimony and defendant's subsequent indictment. While a public employee may be subject to summary discharge, termination may not be in retribution for the exercise of constitutional rights. Brown v. Hirst, *supra;* Hodgin v. Noland, *supra.* The defendant Green challenges plaintiff's allegations, reciting several factual reasons for the dismissal. Where there is a genuine dispute regarding a free speech claim, summary judgment, without full exploration of the issue, is improper. Wilderman v. Nelson, *supra.* The concurrence of protected speech and termination of the employment relationship is enough to invoke an inquiry into the circumstances of that termination. Chitwood v. Feaster, *supra.* This Court emphasizes that it is not finding that the plaintiff's discharge was in fact the result of the exercise of first amendment rights. All that is being decided here is that the allegations are sufficient to entitle plaintiff to present evidence on this claim at a hearing.

▇ Plaintiff also has claimed a deprivation of liberty in that his reputation has been substantially and irreparably damaged as a result of his dismissal. Plaintiff has not adduced any facts to support this contention nor shown that he has been effectively foreclosed of employment opportunities. However, photocopies of newspaper articles concerning the plaintiff's discharge have been appended to indicate the extent of publicity the dismissal received. De-

---

2. Judge Haynsworth added that bickering and disputes between school administration and teachers was not the kind of protected speech which would mandate a hearing.

fendant Green asserts that charges must be filed against the employee or he must be barred from further employment for the plaintiff to prevail on this claim. This is not entirely correct. A dismissal which becomes public and which suggests immorality or dishonesty necessitates procedural due process. Suarez v. Weaver, *supra*. Since this Court has ordered a hearing with regard to plaintiff's first amendment claim, he will be permitted to introduce evidence at that time as to a deprivation of liberty.