**John GIANNARIS, Plaintiff,**

v.

**Elliot FRANK et al., Defendants.**

**No. 72 C 267.**

United States District Court,
N. D. Illinois, E. D.

Dec. 3, 1974.

Elmer Gertz, Wayne B. Giampietro, Chicago, Ill., for plaintiff.

Robert A. Tingler, Freeman & Tingler, Chicago, Ill., for defendants.

MEMORANDUM OPINION
AND ORDER

BAUER, District Judge.

This cause comes before the Court on cross motions by the parties for summary judgment. The facts in the case as

presented in the memoranda and affidavits submitted to the Court indicate that plaintiff Giannaris was employed by the Illinois Toll Highway Authority on June 2, 1969 as an Assistant Administrator of Purchasing. He claims that he was terminated because of his association with ex-Secretary of State Paul Powell on or about January 21, 1971.[1]

Plaintiff states in his affidavit that since his termination he has attempted to obtain other employment but has been unsuccessful. This failure to obtain employment he attributes to his being fired stating that: "This pall still hangs over him, so that he has been unable to obtain other employment in other state agencies, as well as other positions". Further he alleges that he was never given an opportunity for a hearing before he was discharged nor notified of the charges against him. Consequently plaintiff has brought this Civil Rights action under 42 U.S.C. § 1983. The allegations in the amended complaint appear to claim violations of plaintiff's constitutional rights, i.e., due process under the Fourteenth Amendment and freedom of association under the First Amendment.

At the outset it is important to note that the plaintiff was not protected from dismissal by civil service regulations or similar laws. This is not a case wherein a clerk, technician, or laborer was performing tasks which leave little room for judgment or opportunity for wrongdoing. Plaintiff was in a discretionary, sensitive, highly responsible position in which the Tollway Authority bondholders and the public must have absolute confidence. The main issue in this case centers around the question of whether any law or constitutional provision requires that charges of wrongdoing be placed against the plaintiff and a hearing provided before being discharged.

■ To rely upon the civil rights statutes the plaintiff must allege facts showing that the defendants did deprive him of rights, privileges and immunities secured by the Constitution and laws of the United States. Jenson v. Olson, 353 F.2d 825 (8th Cir. 1965); Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46 (1950); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). To evaluate this question requires a look at cases which deal with summary discharge and the drawing of logical parallels between the plaintiff's allegations and defamation. In Tichon v. Harder, 308 F.Supp. 839 (D.C.Conn. 1970) the court approved the summary dismissal of a welfare employee without a hearing, finding neither substantive nor procedural due process violations, and commented that:

"The plaintiff has failed to demonstrate the possibility of irreparable harm. No doubt it was a severe psychological blow for a young woman just embarking upon her chosen career to be dismissed for unsatisfactory work and judgment. But there has been no showing that she is unable to secure other employment in the field of social work . . ." 308 F. Supp. at 842.

■ The plaintiff we deal with here has certainly not lost his right to work, nor has a stigma attached to said plaintiff as a result of any action taken by any of the defendants which would in any way place him at a disadvantage in

---

1. During early 1971 newspaper articles appeared which stated that Mr. Giannaris had been an aide and driver for the late Secretary of State Paul Powell and that while acting as his driver Mr. Powell was meeting with so called "underworld" or "syndicate" figures. When this matter came to the attention of the Governor's Office the Tollway Authority was so informed and advised Mr. Giannaris, because he occupied a very sensitive position in purchasing, he would be terminated rather than allow any opportunity for criticism of Tollway hiring practices. In defendants' brief they admit that Mr. Giannaris was not discharged for any wrongdoing and that none of the defendants ever stated that Mr. Giannaris did a wrongful act.

obtaining employment elsewhere. Government employment is not property or liberty and the due process clause does not apply per se to the holding of government office without showing a legally impermissible reason for discharge. Bailey v. Richardson, *supra*; Jenson v. Olson, *supra*; Kirker v. Moore, 308 F. Supp. 615 (S.D.W.Va.1970); Schultz v. Palmberg, 317 F.2d 659 (D.C.Wyo. 1970); Jordan v. The Metropolitan Sanitary District, 15 Ill.2d 369, 155 N.E.2d 297 (1959). In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972) the failure to renew the contract of a non-tenured teacher was found not to require a pretermination hearing and the court concluded that the teacher had not been deprived of his "liberty" or "property." The court also found that none of the charges against the teacher imposed a "stigma" which would hinder future employment. In the case at bar there is likewise no stigma placed upon the plaintiff and indeed there could not be since, as the plaintiff alleges in his complaint, no charges were made against the plaintiff.

In Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), a teacher whose contract was not renewed alleged the existence of a *de facto* tenure program which he relied upon and which the court concluded gave the teacher a claim of entitlement to what would qualify as a "property" interest within the Fourteenth Amendment. But in the case at bar the plaintiff does not even claim he was entitled to continued employment.

█ It is also true that absent constitutional or legislative limitations to the contrary, government employees are subject to summary dismissal. Reagan v. United States, 182 U.S. 419, 21 S.Ct. 842, 45 L.Ed. 1162 (1901); Shurtleff v. United States, 189 U.S. 311, 23 S.Ct. 535, 47 L.Ed. 828 (1903); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L. Ed.2d 1012 (1959); Cafeteria Workers Union v. McElroy, 109 U.S.App.D.C. 39, 284 F.2d 173 (D.C. Cir. 1960), aff'd. 367

U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). In Alomar v. Dwyer, 447 F.2d 482 (2nd Cir. 1971, cert. denied 404 U. S. 1020, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972) the court said:

"If and when additional exempt positions are to be subject to civil service protection is a matter for action by the appropriate municipal and state authorities and not by a federal court."

In Shurtleff v. United States, *supra*, the appellant was removed by the President from his position as General Appraiser of Merchandise, but appellant was never notified of any charges against him and knew of no cause of his removal. The Court said that the applicable statutes permitted removal for inefficiency, neglect of duty or malfeasance in office, and if removal was for one or more of these causes the appellant would be entitled to notice and a hearing. But the Court found that cause for removal was limited to the statutory specifications because Congress had not attached a condition upon removal that only the reasons specified would justify an employee's discharge. Therefore, the Court concluded that it must be presumed the President did not remove the appellant for any cause assigned in the statute because no notice or opportunity to defend was provided the employee, which thus permitted the summary discharge of the employee.

Unlike *Shurtleff*, the case at bar does not involve a statute and thus there is no issue as to whether certain reasons constitute exclusive causes for discharge or whether notice and a hearing are required.

The Court in Bailey v. Richardson, *supra*, aptly states that to hold office at the will of a superior and to be removable therefrom only by constitutional due process of law are opposite and inherently conflicting ideas. This court further found that:

"[T]he plain hard fact is that so far as the Constitution is concerned there is no prohibition against the dismissal

of Government employees because of their political beliefs, activities or affiliations. That document, standing alone, does not prevent Republican Presidents from dismissing Democrats (or vice versa) . . . . [I]t has not continued to so great an extent . . . because the people became convinced that it was not good government and the Congress and the President wrote that view into statutes and regulations. They, not the Constitution, give Government employees such protection as they have against dismissal for political reasons" 182 F.2d at 59.

In the recent case of Indiana State Employees Assoc. v. Negley, 365 F.Supp. 225 (S.D.Ind.1973), aff'd. 501 F.2d 1239 (7th Cir. 1974), the court concluded that even political discharges were permitted with regard to policymaking employees. The trial court emphasized that absent controlling civil service or tenure legislation, the Constitution does not provide job security for public employees and that it would not be in the best interests of good government for a federal court to invade the state's legislative and executive branches. In affirming this case the Seventh Circuit also cites Gould v. Walker, 356 F.Supp. 421 (N.D.Ill.1973) in support of its conclusion that policymaking or implementing employees are subject to summary discharge.

■ Considering for a moment plaintiff's defamation approach as to why his discharge was illegal, it is important to note that there are no allegations that any or all of the defendants made damaging remarks to the public. On the contrary, Mr. Giannaris' file was marked "resigned" to clearly show there was no allegation of wrongdoing. If Mr. Giannaris carries a burden or stigma it is not the result of the Tollway or its employees, rather it results from a prior employment and resulting publicity.

It must be noted that the discharge of plaintiff is not of such a nature as to bestow a badge of disloyalty or infamy upon him. Thus there is no foreclosure from other employment caused by defendants which would give rise to a due process violation. See Cafeteria and Rest. Wkrs. U. Local 473 v. McElroy, 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961); Wieman v. Updegraff, 344 U.S. 183, 190–191, 73 S.Ct. 215, 97 L.Ed. 216 (1952).

In support of his motion plaintiff cites a number of recent decisions which are not particularly applicable to the facts of this case. For instance Hostrop v. Board of Junior College Dist. No. 115, 471 F.2d 488 (7th Cir. 1972) involved a situation wherein a college president was discharged. However, in that case the president had an employment contract with the defendants. Furthermore, specific charges were placed against him before his dismissal. The Court explained:

> "A person is deprived of 'liberty' if the state damages his standing in the community by charging him with an unsavory character trait such as dishonesty or immorality. Plaintiff's complaint alleges facts showing an attack by defendants on his veracity, for the list of charges which the defendants submitted to justify his dismissal accused him of misrepresentations, supplying false information, and withholding important information. In such a case, due process must provide notice and an opportunity to refute such charges."

In the instant case a contractually established property interest simply does not exist. Plaintiff's memorandum indicates that he obtained his position originally through a political connection and that no written contract was ever executed. In addition no charges were ever placed against the plaintiff thus preventing any damage to his reputation in the community.

In Suarez v. Weaver, 484 F.2d 678 (7th Cir. 1973) a doctor was discharged as a probationary participating physi-

**574**

cian in the medical assistance program of the Illinois Department of Public Aid. The charges against him were relayed to the state department in charge of licensing and disciplining physicians. In reversing the dismissal of the case in the district court the Appeals Court stated:

> "The distinction between charges which trigger procedural protection and those that do not has yet to be drawn with any degree of precision. [Citing cases] Nonretention or dismissal in and of itself will undoubtedly impugn the reputation of the person to some extent. The Supreme Court, however, has made it clear that such nonretention per se is seldom serious enough to warrant a hearing" 484 F.2d at p. 680.

However, as previously noted, the facts in this case indicate that no charges were presented that could tarnish the reputation of plaintiff. Thus this Court is of the opinion that the "line can be drawn" with precision in that plaintiff's dismissal did not violate his constitutional rights in light of his employment status.

Plaintiffs further cite Lipp v. Board of Education, 470 F.2d 802 (7th Cir. 1972) and Adams v. Walker, 492 F. 2d 1003 (7th Cir. 1974). A thorough review of these two cases indicates no real support of plaintiff's position. In fact the *Adams* case strongly supports the theory that many governmental employees, like Mr. Giannaris, who hold sensitive positions, do so at the pleasure of the policy maker such as the governor of the state. As Circuit Judge Cumming stated in *Adams*:

> "While a state might give an individual property rights in such a sensitive position, it would be unusual if it did so. Even in the First Amendment area, we have recognized that political philosophy or affiliation may be relevant to the selection of policy-making officials. State Employment Council 34 v. Lewis, 473 F.2d 561, 574 (7th Cir. 1972); see also Gould v. Walker,

356 F.Supp. 421 (N.D.Ill.1973); cf. Pickering v. Board of Education, 391 U.S. 563, 570, 88 S.Ct. 1731, 20 L.Ed. 2d 811 . . ." 492 F.2d at p. 1007.

Accordingly, it is hereby ordered that plaintiff's motion is denied and defendants' motion for summary judgment is granted.