Ernest BESIG, Preston Cook, and Lidia La Garda, Plaintiffs,

v.

Eugene L. FRIEND, Loris Digrazia, Peter F. Armstrong, Tommy Harris, Amy Meyer, Keith Eickman, Individually and in their capacities as the Recreation and Park Commission of the City and County of San Francisco, their agents, successors, and assigns, John J. Spring, in his capacity as General Manager of the Recreation and Park Department of the City and County of San Francisco, his agents, successors, and assigns, George R. Moscone, in his capacity as Mayor of the City and County of San Francisco, St. Francis Yacht Club, South End Rowing Club, Dolphin Boating and Swimming Club, San Francisco Rowing Club, Pacific Rod & Gun Club, Golden Gate Angling and Casting Club, Golden Gate Model Railroaders, San Francisco Model Railroad Club, Golden Gate Rifle and Pistol Club, Golden Gate Yacht Club, San Francisco Lawn Bowling Club, Golden Gate Lawn Bowling Club, California Association of Pioneer Women, San Francisco Model Yacht Club, Roy A. Lazzari, Defendants.

No. C–76–2878–CBR.

United States District Court, N. D. California.

Nov. 9, 1978.

Sandra Terzian-Feliz, Nancy Scott-Ince, San Rafael, Cal., Dennis Roberts, Oakland, Cal., for plaintiffs.

George P. Agnost, City Atty., Burk E. Delventhal, Deputy City Atty., Paula Jesson, Staff Atty., San Francisco, Cal., for defendant George R. Moscone.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This civil rights action for declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983 is now before the Court on defendant George R. Moscone's motion for summary judgment, made pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having considered the motion, the supporting memoranda and affidavits, and counsels' argument, this Court grants defendant Moscone's motion for summary judgment.

## STATEMENT OF FACTS

On April 28, 1976, plaintiff Lidia M. La Garda was appointed by defendant Moscone, Mayor of San Francisco, to a position as a Commissioner on the San Francisco Recreation and Park Commission. She was appointed to an unexpired term, which was to expire on or about June 27, 1976, two months after her appointment. At the expiration of that term, Ms. La Garda was not reappointed, nor was anyone appointed to the position. Ms. La Garda continued to serve as a Commissioner until June 1, 1978, when the Mayor appointed another to take her place.

As a member of the Recreation and Park Commission, Ms. La Garda was aware of litigation pending in this Court involving the Commission regarding access to public park property leased by the Commission to private clubs. In December 1977, after Ms. La Garda and all the other Commissioners had been informed by Mr. Burk Delventhal of the City Attorney's office of the probable illegality of the Commission practice of leasing park property to private clubs, Ms. La Garda learned that the named plaintiff in the action had withdrawn from the litigation. According to her affidavit, Ms. La Garda, fearing personal criminal liability for the continued violation of the law and believing that the public should have access to and use of park property, decided to become a plaintiff in the action to ensure that it would not be dismissed for want of a prosecuting party. At a public meeting of the Recreation and Park Commission on February 16, 1978, Ms. La Garda announced

her intention to join the lawsuit as a plaintiff.

On February 22, 1978, plaintiff La Garda received a letter from the Mayor, advising her that he was going to appoint another person to her position on the Commission. Ms. La Garda had recently obtained CETA-funded employment in a federal EEOC office, and the Mayor believed it inappropriate for her to remain a Commissioner while holding that job. The timing of the Mayor's letter, one week after the public announcement of her intention to join in the litigation, led Ms. La Garda to doubt the reason stated by the Mayor for not reappointing her. Unable to reach the Mayor and receiving no adequate response from his staff regarding the decision to appoint someone else, Ms. La Garda initiated this portion of the lawsuit. On March 16, 1978 a First Amended Complaint was filed in conjunction with a motion seeking leave to amend the complaint. Included therein was a cause of action seeking relief for Ms. La Garda for her alleged improper "removal" from the Commission.

On April 5, 1978, Ms. La Garda met with Mayor Moscone, at his request, to discuss her appointment. According to her affidavit, Ms. La Garda was told by the Mayor that contrary to her belief, he was not seeking her removal from the Commission due to her part in the lawsuit, or because the Mayor himself had been named in the lawsuit. The Mayor advised her that he sought to remove her only because she held a CETA-funded job, and that he felt that that was a politically sensitive issue for him. The Mayor gave Ms. La Garda the option either to remain on the Commission or keep her job. On April 11, 1978, Ms. La Garda resigned from her CETA-funded position, and she so notified the Mayor by letter on the same date.

On April 13, 1978 the Mayor acknowledged by letter his receipt of Ms. La Garda's letter and indicated his intention to "reappoint" her to the Recreation and Park Department Commission now that the CETA-funded job conflict no longer existed. Additionally, the Mayor expressed his pleasure in Ms. La Garda's decision. He stated that he "look[ed] forward to working with" her.

In a subsequent letter dated April 27, 1978, the Mayor informed Ms. La Garda that he would not reappoint her. Since mailing his April 13th letter indicating his intention to reappoint her, he had learned that she had submitted an amended complaint in the litigation, alleging that she was being "improperly removed from her position as Commissioner in retaliation for her exercise" of constitutional rights by joining as a party in the litigation. The Mayor explained that he was not reappointing Ms. La Garda because if he did so,

"the public perception would be that I was doing so under pressure of your law suit and, specifically, in response to your charge against me. I find that a very dangerous precedent since it would erroneously lead others to believe that the Office of the Mayor could be influenced by the filing of a law suit or other forms of pressure. Furthermore, any Commissioner is a member of the Executive branch of government and, necessarily, the relationship between such Commissioner and the Mayor who acts as Chief Executive must be based on mutual confidence and not be the result of confrontation, legal or otherwise."

On June 2, 1978, the Mayor appointed Luisa Ezquerro to replace Ms. La Garda on the Commission.

Defendant Moscone moves for summary judgment with respect to plaintiffs' two claims regarding his nonreappointment of Ms. La Garda first, that Mayor Moscone "removed" plaintiff La Garda from the Recreation and Park Department Commission in violation of Section 8.107 of the Charter of the City and County of San Francisco, and alternatively, second, that Mayor Moscone failed to reappoint Ms. La Garda in retaliation for her joining in the lawsuit seeking the opening of certain park facilities to all members of the public. Recognizing that his motive for replacing Ms. La Garda is a disputed issue of fact, and thus not a basis for summary judg-

ment, see *Tankersley v. Albright,* 514 F.2d 956, 963 n.8 (7 Cir. 1975), the Mayor admits, for the purpose of this motion, that the allegations of retaliatory action against him are true. The Court will first address the issue of "removal" and the alleged violation of the City and County Charter.

## CHARTER CLAIM

■ Section 8.107 of the Charter of the City and County of San Francisco provides in relevant part;

"Any appointee of the mayor, exclusive of civil service, recreation and park, and public utilities commissioners, and members of the school board may be removed by the mayor."

Plaintiff La Garda contends that under this section, the Mayor may remove a commissioner of the Recreation and Park Department only for cause. However correct this interpretation may be, it is of little relevance to the instant controversy.

Plaintiff La Garda was appointed to the Commission to fill an unexpired term which expired on June 27, 1976. As recognized in her memorandum in opposition to this motion, she "was not reappointed, nor was anyone appointed to the position." Therefore, she was no longer an "appointee" as contemplated by Section 8.107 of the Charter and could be replaced without cause.

Ms. La Garda was in effect a hold-over Commissioner. As such she served at the pleasure of the Mayor who could appoint or replace her at any time. With no statutory or Charter provision providing for the status of a hold-over Commissioner, the Court is guided by both case law and state policy.

"[I]t is the general rule, with possibly certain exceptions [citation omitted] not here pertinent, that when there is no expression in the statute to the contrary, a public officer who continues to perform the duties of the office and holds office beyond the term for which he was elected or appointed, holds office *until his successor is selected and qualifies.* The basis for that rule is the policy against having a vacancy in public office—having a gap between successive office holders. [Citations omitted.]" *Hartford Accident & Indemnity Co. v. City of Tulare,* 30 Cal.2d 832, 836, 186 P.2d 121, 123 (1947) (*en banc*) (emphasis added).

State policy with respect to hold-over appointees is reflected in California Government Code § 1302:

"Every officer whose term has expired shall continue to discharge the duties of his office *until his successor has qualified.*" (Emphasis added.)

Accordingly, Ms. La Garda could have been replaced at any time after the expiration of the term for which she was "appointed." Mayor Moscone's appointment of Luisa Ezquerro was therefore not in violation of the Charter.[1]

## POLICYMAKING

■ Alternatively, plaintiff argues that even if she is considered an untenured "at will" official, who can be removed from office for no reason, she cannot be removed for the wrong reason, e. g., " 'as a reprisal

1. The Court does not lightly dismiss plaintiff's argument, made during the hearing on this motion, in which she contended that the result reached here effectively permits the Mayor and his successors to maintain total control over the Commission by appointing Commissioners for only short periods of unexpired terms, and then allowing them to hold over, so long as they do not act inconsistently with the Mayor's interests. Such a strategy, it was argued, circumvents the apparent intent of Section 8.107 of the Charter which establishes a relatively independent Commission by excepting the members from the Mayor's removal powers. Though not without some merit, this argument fails at the practical level. To be successful such a strategy would need the acquiescence of the appointees themselves who would have to resign regularly just prior to the expiration of their terms. Furthermore, cooperation between departing and newly elected Mayors would be necessary to allow this scenario to be played out as well as cooperation between the new Mayor and his predecessor's appointees. While all of this is possible, its actual occurrence is highly unlikely. Therefore, absent an established practice of short-term appointments and long-term hold-overs, this Court will not prescribe a prophylactic rule to ensure against a day which in all likelihood will never come.

for the exercise of constitutionally protected rights.'" *See Perry v. Sindermann,* 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education,* 391 U.S. 563, 568, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Since right of access to the courts for the redress of grievances is a protected activity under the First and Fourteenth Amendments,[2] *see NAACP v. Button,* 371 U.S. 415, 429–430, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), the Mayor, according to plaintiff, could not legally remove her for joining in the litigation over park properties and social clubs, though he could have removed her for no reason. In opposition, the Mayor argues that, as a matter of law, he may remove Ms. La Garda from her position as a hold-over Commissioner in retaliation for the exercise of her First Amendment rights because she was a policymaking official. Accordingly, the Court turns to the issue of policymaking.

"No clear line can be drawn between policymaking and nonpolicymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical. * * * An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Elrod v. Burns,* 427 U.S. 347, 367–368, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1978).

Plaintiff La Garda contends that as a Commissioner of the Recreation and Park Department she did not hold a policymaking position.[3] However, at the same time she states that "*the Mayor has no policy-making role to play in the administration of the Recreation and Park Department.*" Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant Moscone's Motion for Summary Judgment, at p. 8 (emphasis in the original). Together these two assertions are anomalous. Some person or group of persons administering a public agency must occupy a policymaking position. Plaintiff's contention that Department policy is clearly delineated by the Charter fails to appreciate the scope of the duties and responsibilities of a policymaking official. That official has obligations which may be generally specified, but they are without specifically defined boundaries. To his discretion is left the myriad of decisions necessary to ensure the effective administration of government. The position taken by plaintiffs can only exist where the statutes governing the Department and the Commission are self-executing. Clearly they are not. Section 3.500 of the Charter authorizes the boards and commissions of the City to "prescribe reasonable rules and regulations not inconsistent with this charter for the conduct of its affairs * * * for the conduct and government of its officers and employees, and for the administration, custody and protection of property under its control * * *." Specifically, the Recreation and Park Commission under Section 3.552 is given "the complete and exclusive control, management and direction of the parks, playgrounds, recreation centers and all other recreation facili-

---

**2.** Though not deciding this issue, the Court accepts, for the purpose of this motion only, that the First and Fourteenth Amendments protect that form of speech involved in litigation.

**3.** Plaintiff La Garda first contends that "[t]he matter on which LA GARDA acted was not a matter of 'policy' for either the Commission or the MAYOR. * * * It was, instead, a matter of *law,* as to which neither the Commissioners nor the MAYOR have any discretion * *.'" Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant Moscone's Mo-

tion for Summary Judgment, at p. 8. Therefore, she could not be removed in retaliation for her exercise of constitutional rights because a question of policy was not at issue. Plaintiff misreads the applicable law. The question is not whether the controversy between the public employee and employer giving rise to the dismissal is a matter of policy, but whether the employee occupies a policymaking position. *See Elrod v. Burns,* 427 U.S. 347, 367–368, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

ties, squares, avenues and grounds" under its jurisdiction. How the Commission exercises these management responsibilities are necessarily questions of policy. Accordingly, the individual Commissioners are policymakers.

The fact that Ms. La Garda did occupy a policymaking position does, to a great extent, resolve the question at hand.

In *Pickering v. Board of Education, supra,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, the Supreme Court first indicated its reluctance to insulate all public employees[4] from removal as retaliation for statements made against their superiors. There the Court held that a public school teacher could not be dismissed for publishing in a newspaper a letter condemning the Board of Education's allocation of school funds. However, the Court noted:

"It is possible to conceive of some positions in public employment in which the need for confidentiality is so great that even completely correct public statements might furnish a permissible ground for dismissal. Likewise, positions in public employment in which the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them can also be imagined." 391 U.S. at 570 n.3, 88 S.Ct. at 1735.

Later, in *Elrod v. Burns, supra,* 427 U.S. 347, 367–368, 96 S.Ct. 2673, 49 L.Ed.2d 547, the Court, in a plurality opinion, further delineated this exception in declaring unconstitutional the dismissal of nonpolicymaking, nonconfidential state and local government employees because of their partisan political affiliation or non-affiliation. The importance of loyalty and trust between the executive and his policymakers, necessary to ensure the implementation of his policies, was sufficient to justify the policymaking exception to the general rule that government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interest—especially, his interest in freedom of speech." *Perry v. Sindermann, supra,* 408 U.S. at 597, 92 S.Ct. at 2697. In the instant case that rationale is certainly applicable.

A healthy working relationship between the Mayor and the Commissioners is a necessary predicate to the effective administration of park property and resources. When that relationship is impaired because of a Commissioner's remarks challenging the integrity of the Mayor, the Mayor may act as he sees fit, so long as no statute bars him from taking the contemplated action. *Cf. Lefkowitz v. Cunningham,* 431 U.S. 801, 810–811, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) (Stevens, J., dissenting) (A Cabinet member speaking out against the policies of the President may be removed as a result of his exercise of First Amendment rights.). The policymaker is free to speak, but the executive is not without power to act in response. "The fact that the Constitution protects the exercise of the [policymaker's] right does not mean that it also protects the speaker's 'right' to hold high public office." 431 U.S. at 810, 97 S.Ct. at 2138 (footnote omitted). *See Alfaro De Quevedo v. De Jesus Schuck,* 556 F.2d 591, 593 (1 Cir. 1977); *Rosenberg v. Redevelopment Authority of City of Philadelphia,* 428 F.Supp. 498, 500–501 (E.D.Pa. 1977); *Gould v. Walker,* 356 F.Supp. 421, 425–426 (N.D.Ill.1973). *Cf. Hirsch v. Green,* 368 F.Supp. 1061, 1067 (D.Md.1973).

Ms. La Garda acted as she saw fit. However, as a policymaker she did so at her peril with respect to her position as a Commissioner. Because she was serving only as a hold-over Commissioner, Mayor Moscone was in no way limited in his decision as to her future in his administration. Consequently, his decision to replace her, even if done in retaliation for her joining in the

---

4. Here, unlike *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the plaintiff is not a salaried employee removed from a position from which she earns her livelihood. Consequently, different factors are present when considering the injury suffered by plaintiff.

legal action, leaves her without recourse to claim that she was improperly removed.

Accordingly, IT IS HEREBY ORDERED that defendant Moscone's motion for summary judgment is hereby granted.